**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Scott and Briana Scott, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>City of Phoenix, a body politic; and Randy Spenla,<br><br>    Defendants. | No. CV-09-0875-PHX-JAT<br><br>**ORDER** |

Pursuant to the Court's order denying the original motion for summary judgment filed by Defendants City of Phoenix and Randy Spenla ("Spenla", and together with the City of Phoenix, "Defendants"), the parties were instructed to submit additional memoranda addressing whether Plaintiff Leslie Scott ("Scott") has established a *prima facie* case for racial discrimination under the *McDonnell Douglas* burden-shifting framework, and whether any material facts are genuinely in dispute. (Dkt. 60.) The pending Motion for Summary Judgment on Liability (Dkt. 61) is fully briefed, and, for the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment on Liability.

**I.  BACKGROUND**

Because all material facts must be viewed in the light most favorable to the

non-movant, the Court construes the evidence in the light most favorable to Scott.[1]

Scott is an African American employee in the Auditor Department of the City of Phoenix. (Dkt. 62 or "DSOF" at ¶¶ 1–2; Dkt. 67-1 or "PRSOF" at ¶¶ 1–2.) Since 2004, Spenla has served as the City Auditor and head of the Auditor Department. (DSOF at ¶ 3; PRSOF at ¶ 3.)

On January 26, 2007, Scott filed an action against the City of Phoenix claiming that the City of Phoenix violated a provision of the Americans with Disabilities Act, 42 U.S.C. § 12111, by allegedly disclosing Scott's protected medical information (the "2007 ADA action"). (DSOF at ¶ 10; PRSOF at ¶ 10.) From October 2007 to early January 2008, Scott was on medical leave from his employment with the City of Phoenix due to issues allegedly related to the 2007 ADA action. (DSOF at ¶ 11; PRSOF at ¶ 11.)

In January 2008, when Scott returned to work, through March or April 2008, Spenla was Scott's immediate supervisor. (DSOF at ¶ 12; PRSOF at ¶ 12.) Upon Scott's return to work on January 2, 2008, Spenla directed Scott to sit at a desk on the south side of the Auditor Department's downtown building. (DSOF at ¶ 13; PRSOF at ¶ 13.) According to Scott, auditors were normally allowed to select their own work spaces, regardless of their supervisor's or team's location. (Dkt. 67-2; Dkt. 53 or "PSOF" at ¶ 14.)

Scott, who is over six feet tall, felt cramped in the assigned work space on the south side of the Auditor Department. Due to the desk's configuration, Scott felt that he was unable to move his legs. (DSOF at ¶ 15; PRSOF at ¶ 15.) In early January 2008, after Scott complained about the work space, Spenla contacted the City of Phoenix's ergonomic

---

[1] The Local Rules require a party opposing a motion for summary judgment to file a controverting statement of facts "indicating whether the [non-moving] party disputes the statement of fact set forth in that paragraph [with] a reference to the specific admissible portion of the record supporting the [non-moving] party's position if the fact is disputed." Rules of Practice of the U.S. District Court for the District of Arizona ("Local Rule") 56.1(b). Contrary to the requirement in the Local Rules, Plaintiff's Response to Defendant's Controverting Statement Facts fails to reference any admissible portion of the record with respect to disputed facts. (Dkt. # 67-1.) Therefore, the Court will note Scott's disputed facts, but will not take into consideration the unsupported grounds for the disputes.

1 specialist to evaluate the work space. (DSOF at ¶ 19; PRSOF at ¶ 19.) The ergonomic evaluation was completed on January 11, 2008, and the recommended changes were made to Scott's work space. (DSOF at ¶¶ 19–20; PRSOF at ¶¶ 19–20.) After the changes were made, Scott did not have any problems with comfort at his work space. (DSOF at ¶ 20; PRSOF at ¶ 20.)

Caleb Ebuehi was an African American employee in the pre-termination phase of probation on January 2, 2008. Mr. Ebuehi sat on the north side of the Auditor Department's downtown building. (DSOF at ¶ 23; PRSOF at ¶ 23.) Spenla did not want Scott's work space to be located on the same side of the building as Mr. Ebuehi. (DSOF at ¶ 24; PRSOF at ¶ 24; PSOF at ¶ 26.) This was the first time Spenla did not want two employees not to speak with each other. (DSOF at ¶ 28; PRSOF at ¶ 28.) However, even after Mr. Ebuehi's employment was terminated, Scott remained on the south side of the building. (DSOF at ¶ 29; PRSOF at ¶ 29.)

Scott filed an internal charge of retaliation with the City of Phoenix alleging that his placement at the undesirable work space was in retaliation for filing the 2007 ADA action. (DSOF at ¶ 17; PRSOF at ¶ 17.) In connection with his internal charge, Scott obtained a CD with a recorded interview of Spenla. (PSOF at ¶ 17.) The contents of this interview, which Scott had transcribed, appear to serve the basis for this action.[2] (PSOF at ¶¶ 17–18.)

During his deposition, Spenla stated that he separated Scott's work space from Mr. Ebuehi's work space to prevent the facilitation of "somebody who will say and do anything to be a victim and wants to be retaliated against, wants to file more charges." (PSOF at ¶ 30;

---

[2] Defendants object to the transcript of the interview that Scott relies on in his statement of facts. For purposes of this Order, the Court will consider evidence subject to a potential hearsay objection, because it is inappropriate to focus on the admissibility of the form of evidence at the summary judgment stage of the proceedings. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The focus at the summary judgment stage is the admissibility of the contents of the evidence. *Id.*; *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.").

Dkt. 53-3, Ex. 3 at 44:1–8.) However, Spenla contended that Scott's work space assignment was unrelated to race, and had nothing to do with segregating the only two African American employees in the Auditor Department. (PSOF at ¶ 31; Dkt. 53-3, Ex. 3 at 41:3, 44:15–16, 45:3.) According to Spenla, the separation of Scott and Mr. Ebuehi related to Mr. Ebuehi's pre-termination status. (Dkt. 53-3, Ex. 3 at 44:20–25.)

Prior to March 19, 2008, Scott spoke with the City of Phoenix's Human Resources Department about procedures for applying for a transfer. (DSOF at ¶ 30; PRSOF at ¶ 30.) On March 19, 2008, Scott met with Bob Wingenroth, the director of the City of Phoenix's Finance Department. Mr. Wingenroth suggested that Scott put his name on the transfer list, and they discussed an accountant position. (DSOF at ¶ 32; PRSOF at ¶ 32.) Spenla contacted Mr. Wingenroth and Lera Riley, in the Human Resources Department, with regard to the transfer and informed them that Scott, at that time, was not physically or mentally able to handle a position with any responsibility. (PSOF ¶ 36.) The transfer to the Finance Department did not occur. (PSOF ¶ 37.)

In March or April 2008, Scott was moved to a different team in the Auditor Department managed by Diane Artrip, who is Scott's current supervisor. (DSOF at ¶ 22; PRSOF at ¶ 22.)

On January 6, 2009, Scott filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (DSOF at ¶ 36; PRSOF at ¶ 36.) The EEOC issued its right-to-sue letter when it was unable to determine whether the matters alleged in the charge of discrimination established a violation. (DSOF at ¶ 37; PRSOF at ¶ 37.) This action was filed on April 27, 2009. (Dkt. 1 or "Compl."; DSOF at ¶ 38; PRSOF at ¶ 38.) Scott alleges that Spenla "imposed disparate and discriminatory working conditions upon Scott on the basis of Scott's race." (Compl. at ¶ 10.) Scott seeks equitable and monetary remedies. (Compl. at ¶ 24.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a

matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that factual assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)).

A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)*; see Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) ("A genuine issue of fact is one that could reasonably be resolved in favor of either party."). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 249. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison*, 357 F.3d at 1075.

### III. ANALYSIS

In his Complaint, Scott alleges that: (1) Spenla ordered Scott to sit in an undesirable location to prevent him from interacting with the only other African American employee in

the downtown office of the Auditor Department; (2) Spenla attempted to segregate Scott from the only other African American employee to prevent the employees from talking about discriminatory conduct; (3) Spenla made several inaccurate and derogatory comments about Scott to at least two other supervisors; and (4) Spenla conspired with other supervisors to deprive Scott of employment opportunities at the City of Phoenix. (Compl. at ¶¶ 10–14.) Scott alleges that white employees in the Auditor Department were not subjected to the same conditions of employment as Scott. (Compl. at ¶ 15.)

Scott's racial discrimination claims are asserted against the City of Phoenix under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. section 1981, and against Spenla under 42 U.S.C. section 1983. (Compl. at ¶ 1.) Although the Supreme Court developed the *McDonnell Douglas* burden-shifting framework, discussed below, in connection with discrimination claims pursuant to Title VII, the framework is equally applicable to claims of discrimination based on disparate treatment pursuant to 42 U.S.C. sections 1981 and 1983. *See Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1180 n.11 (9th Cir. 1998).[3] Defendants propound two arguments with respect to both work space and transfer request claims. First, Defendants argue that there is no evidence of adverse employment actions. Second, Defendants argue that the employment actions were not due to racial discrimination. Rather than directly challenging Defendants' arguments, Scott argues that the Complaint sets forth a hostile work environment cause of action, rather than the disparate treatment cause of action.

---

[3] "Claims of disparate treatment arising under Title VII and section 1981 are parallel because both require proof of intentional discrimination. The same standards are used to prove both claims, and facts sufficient to give rise to one are sufficient to give rise to the other. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985) (internal citations omitted).

"Because section 1983 incorporates the equal protections standards that have developed in fourteenth amendment jurisprudence," in order to prevail on a section 1983 claim alleging racial discrimination, the plaintiff must first prove that the defendant purposefully discriminated against him because of his race. *Id.* (citing *Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) and *Washington v. Davis*, 426 U.S. 229, 239–42 (1976)).

### A. *McDonnell Douglas* Burden Shifting Framework

"An employer may not discriminate against 'an employee or applicant for employment because of such individual's race, color, religion, sex, or national origin[.]'" *Equal Employment Opportunity Comm'n v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 999 (9th Cir. 2002) (quoting 42 U.S.C. § 2000e-2(a)(1)). "[S]uch discrimination is established when one of those factors 'was a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Staub v. Proctor Hosp.*, __ U.S.__, 131 S. Ct. 1186, 1191 (2011) (quoting 42 U.S.C. § 2000e-2(a), (m)).

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a mechanism for determining whether intentional discrimination occurred. 411 U.S. 792, 802 (1973). The plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of racial discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas*." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

Applying the *McDonnell Douglas* burden-shifting framework to a plaintiff's claims of racial discrimination, the plaintiff must establish a *prima facie* case of racial discrimination by showing:

> (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). The burden then shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the challenged employment action. *Id.* If the defendant carries its burden, then the plaintiff "is afforded an opportunity to demonstrate that the 'assigned reason was a pretext or discriminatory in its application.'" *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993) (quoting *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356,

1358–59 (9th Cir. 1985)).

**B.     Evidence of Adverse Employment Action**

To establish a *prima facie* case for racial discrimination, an employee must suffer an adverse employment action. *Cornwell*, 439 F.3d at 1028; *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000). Defendants argue that neither Scott's assignment to the undesirable work space, nor the denial of his transfer request, amounts to an adverse employment action. (Dkt. 61 at pp. 3, 5.) Scott argues that the "standard imposed in harassment cases has been rejected by the Supreme Court." (Dkt. 67 at p. 5.)

With respect to his response, Scott appears to argue that the adverse employment action does not need to be an "ultimate employment decision." However, this is not Defendants' position. Defendants argue that Scott has not alleged the existence of an adverse employment decision, as required by the *McDonnell-Douglas* burden-shifting framework, and Defendants cite to factually-similar cases. Scott, at no point in his response, squarely addresses any of Defendants' concisely articulated defenses. The Court is not requiring Scott to prove the existence of an "ultimate employment decision." Rather, case law requires Scott to show an adverse employment action, which Scott has not met his burden to show.

*1.     Claims Related to Work Space Assignment*

Courts in the Ninth Circuit have previously considered whether a work space assignment constituted an adverse employment action under the *McDonnell Douglas* burden-shifting framework. Scott does not address any of the issues raised in these cases, even though Defendants cite to several cases in their motion for summary judgment. The Court has reviewed the cases considering whether an adverse employment action has occurred, and finds that Scott's assignment to the undesirable work space on the south side of the Auditor Department does not rise to the level of an adverse employment action for purposes of establishing a *prima facie* case of racial discrimination.

Articulating a standard for whether a work space assignment constitutes an adverse employment action, the Court of Appeals in *Chuang* determined that the plaintiffs established a *prima facie* case with respect to the forcible relocation of their laboratory space, because

1 the forcible relocation of the plaintiffs' laboratory resulted in the disruption of ongoing
2 research projects, the loss of experimental subjects, the withholding or loss of grants, damage
3 to and misplacement of expensive equipment, relocation to an inadequate laboratory space,
4 and the loss of research team members. *Id.* at 1125–26. The Court of Appeals concluded
5 that "[t]he removal of or substantial interference with work facilities important to the
6 performance of the job constitutes a material change in the terms and conditions of a person's
7 employment." *Id.* 1126. Applying the standard set forth in *Chuang*, the Court does not find
8 that Scott's assignment to a work space on the south side of the Auditor Department
9 constitutes "a material change" in the terms and conditions of Scott's employment. In fact,
10 the change caused by the work space assignment in this action was less significant than the
11 changed caused by the office relocation in *Green v. Maricopa County Community College
12 District*, 265 F. Supp. 2d 1110 (D. Ariz. 2003).

In *Green*, the plaintiff alleged that she was subject to disparate treatment because her office was "segregated" from the offices of other administrators. *Id.* at 1120. However, the District Court found that the plaintiff failed to show that the location of her office and lack of signage constituted "a substantial interference with work facilities important to the performance of a job." *Id.* (citing *Chuang*, 225 F.3d at 1126). Further, the plaintiff failed to show that her office location was objectively undesirable, not merely that she had a subjective desire to be placed in a different location. *Id.* at 1121 (citing *Vasquez v. County of L.A.*, 307 F.3d 884, 891 (9th Cir. 2002) ("[T]he proper inquiry is to view the action objectively to determine whether it was adverse. Otherwise, every minor employment action that an employee did not like could become the basis of a discrimination suit.")).

Scott has failed to provide evidence that his work space caused substantial interference with his ability to perform his job, so as to cause a material change in the terms and conditions of his employment. Based on the evidence before the Court, Defendants promptly responded to Scott's complaint concerning his uncomfortable work space configuration. (DSOF at ¶ 19; PRSOF at ¶ 19.) Additionally, to the extent that Scott's work space configuration interfered with his ability to perform his job, the parties agree that the

ergonomic corrections resolved Scott's complaints of discomfort. (DSOF at ¶ 20; PRSOF at ¶ 20.) Aside from the initial discomfort, which was corrected, Scott has not provided any evidence that there was something objectively undesirable with the south side of the building and a work space near the other members of his auditing team. Accordingly, the Court finds that Scott fails to establish that the work space assigned to him in January 2008 constitutes an adverse employment action under Title VII, and, therefore, Scott fails to state a *prima facie* case for racial discrimination.

### 2. *Claims Related to Scott's Transfer Request*

Defendants argue that because Scott was not transferred to a lower paying job, the denial of the transfer request does not constitute an adverse employment action, and, therefore, Scott has failed to establish a *prima facie* case for racial discrimination. Scott disputes that the accountant position in the Finance Department constituted a demotion. (PRSOF at ¶ 32; PSOF at ¶ 37 n.5.) However, regardless of whether the accountant position constituted a lateral transfer or a demotion, the denial of a transfer request does not necessarily constitute an adverse employment action. *See e.g.*, *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886–87 (6th Cir. 1996) (finding that a demotion without change in pay, benefits, duties or prestige is insufficient to constitute a materially adverse employment action); *Felix v. City & County of Denver*, 729 F. Supp. 2d 1243, 1261 (D. Colo. 2010) (holding that the denial of a plaintiff's request to transfer to another unit does not constitute an adverse employment action under Title VII); *Lee v. Potter*, No. C 07-254 SBA, 2008 WL 4449568, at *9 (N.D. Cal. Oct. 1, 2008) ("As the terms and conditions of plaintiff's employment did not objectively change for the worse as a result of her lateral transfer or defendant's denial of her requests, it was not an adverse employment action as a matter of law."); *Del Castillo v. Wash. Dep't of Soc. & Health Servs.*, No. C05-1122JLR, 2007 WL 2713035, at *8 (W.D. Wash. Sept. 14, 2007) ("[Defendant]'s decision to deny [plaintiff]'s request to transfer did not constitute an adverse employment action because it was not a 'disadvantageous' change in the workplace, but a continuation of the status quo."); *Foraker v. Apollo Group, Inc.*, 427 F. Supp. 2d 936, 942 (D. Ariz. 2006) ("[N]either verbal

disparagement, low performance rating, denial of request for change of supervisor, nor denial of transfer amount to an adverse action.") (citing *Kortan v. State of Cal.*, 5 F. Supp. 2d 843, 853 (C.D. Cal. 1998)).

Here, the denial of Scott's request to transfer from one City of Phoenix department to another does not constitute an adverse employment action. Scott does not contend that the transfer would have altered his job responsibilities or benefits in any way. It appears that the sole purpose of the request was to obtain a different supervisor while otherwise performing the same work. Because the denial of the transfer request did not materially affect Scott's terms and conditions of employment in any way, the denial does not constitute an adverse employment action for purposes of his racial discrimination claims.

Further, Scott fails to provide any evidence suggesting that transfer requests were ordinarily granted by the City of Phoenix. Additionally, there are no allegations setting forth Scott's qualifications for, or the availability of, the position to which he sought a transfer. *See e.g.*, *Heyer v. Governing Bd. of Mount Diablo Unified School Dist.*, No. C-10-4525 MMC, 2011 WL 2600913, at *3 (N.D. Cal. June 30, 2011) (finding that the denial of transfer did not constitute an adverse employment action where the plaintiff did not plead facts suggesting the request would ordinarily be granted, and that the plaintiff was qualified for the transfer).

Finally, the Court finds the failure-to-promote analysis set forth in *Lyons* is analogous to the failure-to-transfer claim asserted by Scott. Scott has not set forth any facts or evidence showing that he was qualified for the position in the Finance Department at issue, and that another employee who is not African American, with equal or lesser qualifications, was hired for the position sought by Scott. *Lyons*, 307 F.3d at 1112 (citing *McDonnell Douglas*, 411 U.S. at 802). Scott offers no evidence to controvert Spenla's comments that Scott was not physically or mentally able to handle a position with any responsibility (PSOF ¶ 36), and Spenla's comments place Scott's qualifications into question. Further, Scott has offered no evidence that an accountant position was available in March 2008 in the Finance Department, and that the City of Phoenix hired another employee for that accountant position. In the

absence of these facts, the Court finds that Scott has failed to establish a *prima facie* case of discrimination with respect to the denial of his transfer request.

### C. Evidence of Racial Discrimination

Assuming *arguendo* that Scott established a *prima facie* case for racial discrimination, Scott cannot refute Defendants' legitimate and non-discriminatory reasons for requiring Scott to sit in the assigned work space, and for denying Scott's request to transfer departments. Scott has not offered any direct evidence that Spenla was motivated by discriminatory intent. *See Chuang*, 225 F.3d at 1128 (finding direct evidence of pretext where member of decision-making body stated that "two chinks . . . were more than enough"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (finding direct evidence of pretext when employer referred to another employee as a "dumb Mexican" and that he was hired because he was a minority). As an alternative to direct evidence, a plaintiff may prove pretext through circumstantial evidence. To show pretext using circumstantial evidence, a plaintiff must put forth specific and substantial evidence challenging the credibility of the employer's motives. *Vasquez*, 349 F.3d at 642. However, Scott has not shown that Defendants' proffered explanations are inconsistent or otherwise not believable.

*1. Claims Related to Work Space Assignment*

As noted above, Spenla ordered Scott to sit in an undesirable location to prevent him from interacting with another employee, who was the only other African American employee in the downtown office of the Auditor Department. However, Scott's "belief" that Spenla's actions were "racially motivated" (PSOF at ¶ 17), without more, does not give rise to an inference of racial discrimination, and Scott fails to show that Defendants' proffered explanation is a pretext for racial discrimination. *See Lowe*, 775 F.2d at 1005.

According to Defendants, Spenla assigned Scott to the particular work space on the south side of the building where his auditing team was located. (DSOF at ¶¶ 13–14.) Additionally, Spenla did not want Scott to be stationed on the same side of the building as Mr. Ebuehi, because Mr. Ebuehi was in the pre-termination phase of probation on January 2, 2008. (DSOF at ¶¶ 23–24.) Spenla separated the work spaces of Scott and Mr. Ebuehi

in order to prevent these employees from filing additional retaliation claims against Defendants. (PSOF at ¶ 30.) Defendants also note that the separation of Scott's and Mr. Ebuehi's work spaces did not prevent the two employees from interacting with each other during the workday. (DSOF at ¶ 26.[4]) Spenla contends that the separation had nothing to do with the employees' race. (PSOF at ¶ 31.) There is no evidence that Spenla's decision to place Scott on the south side to be near his auditing team was pretextual. Scott's attempt at casting doubt on Defendants' proffered explanation is limited to simply arguing that Spenla segregated the only two African American employees from each other. This is not specific and substantial evidence, which is required to show pretext. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). Scott has not offered any evidence indicating that Spenla's decisions relating Scott's work space would have been different if either or both Scott or Mr. Ebuehi were non-African American employees. Mere conjecture on the part of Scott is not enough.

Because Scott has failed to show that Spenla's proffered legitimate reasons for assigning Scott to a work space on the south side of the building were pretextual, Scott's racial discrimination claims based on his work space assignment fail as a matter of law.

### 2. *Claims Related to Transfer Request*

Even if Scott could establish a *prima facie* case for employment discrimination with respect to the denial of his transfer request, Defendants have rebutted the presumption of racial discrimination by showing that Spenla had a legitimate, nondiscriminatory reason for not transferring Scott. Scott fails to show that Defendants' stated nondiscriminatory reasons were a pretext. Spenla's statements from the interview transcript indicate that Spenla did not think Scott's transfer to another department was appropriate, because Scott could not "physically or mentally" handle the responsibility of the contemplated position. (PSOF at

---

[4] Scott disputes this statement of fact. However, Scott's explanation of his dispute is effectively non-responsive. (Dkt. 67-1 at ¶ 26.) Scott does not dispute that employees use the same entrance, kitchen and bathroom, and attend the same staff meetings.

¶ 36.) This is not evidence of racial discrimination. In fact, it is evidence that Scott may not have been qualified for a position in the Finance Department. Scott has offered no evidence indicating that the denial of the transfer request was motivated by racial discrimination. The Court is not persuaded that a discriminatory reason more likely motivated Defendants, or that Defendants' proffered explanation is unworthy of credence. *Chuang*, 225 F.3d at 1124 (citing *Burdine*, 450 U.S. at 256).

Scott also claims that Spenla made several inaccurate and derogatory comments about Scott to at least two other supervisors, and that Spenla conspired with other supervisors at the City of Phoenix to deprive Scott of employment opportunities. (Compl. at ¶¶ 13–14.) To the extent that these allegations refer to comments or conduct distinct from Spenla's comment above concerning the transfer request and Scott's ability to handle responsibility, these claims fail to state a cause of action for racial discrimination. There is nothing in the record before the Court describing these alleged comments; nor is there any evidence or allegations as to when and to whom these alleged comments were made.[5] Further, even if the Court accepted as true that Spenla made inaccurate and derogatory comments about Scott, there is no evidence that the content of these comments concerned Scott's race or related to race in general.

### D. Hostile Work Environment Claim

In his response, rather than address each of Defendants' arguments, Scott appears to argue that the racial discrimination standards cited in Defendants' motion for summary judgment are inapplicable, because Scott has stated a hostile work environment claim, instead of a claim for disparate treatment. Nowhere in the Complaint does the term "hostile work environment" appear. However, Scott refers to the "disparate and discriminatory working conditions" imposed upon him, and then sets forth an example of his working

---

[5] Scott argues that Spenla questioned Scott's physical abilities and "pain card", as well as instructed auditors not to interact with Scott. (Doc. 67 at p. 6.) Even accepting these comments and instructions as true, there is nothing in the record indicating that Defendants' conduct was racially-motivated.

- 14 -

conditions. (Compl. at ¶¶ 10, 11.) Therefore, even though the Court views the Complaint as setting forth a cause of action for disparate treatment, the Court also will consider whether Scott has established a hostile work environment claim.

In order to prevail on a hostile work environment claim, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642 (quoting *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)). To determine if the conduct was sufficiently severe or pervasive to violate Title VII, the Court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (internal quotations omitted). Further, "the working environment must both subjectively and objectively be perceived as abusive." *Vasquez*, 349 F.3d at 642 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)). Spenla's conduct was not severe or pervasive enough to constitute a hostile work environment. Nor was Spenla's conduct even racial in nature.

Scott claims that Spenla "expressed a view that Scott was no longer family because of the discrimination lawsuit that he filed [the 2007 ADA action]."[6] (Dkt. 67 at p. 5.)[7] However, the primary basis for Scott's claim arises from Spenla's assignment of Scott to an

---

[6] Scott does not contend that he has asserted a claim for retaliation. Further, even if he did assert a claim for retaliation in connection with the filing of the 2007 ADA action, it is unclear why such claim for retaliation would arise under Title VII for racial discrimination. *See Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1242 (9th Cir. 2010) ("The ADA forbids discrimination in employment on the basis of disability, . . . and prohibits retaliation against those who oppose acts prohibited by the ADA.") (citing 42 U.S.C. §§ 12112(a), 12112(b)(5), 12203).

[7] Scott's citation to paragraph 10 of his statement of facts does not provide evidence of Spenla's purported "view" of Scott. (Dkt. 53.) Presumably, Scott's response meant to refer to paragraph 24 of his statement of facts.

undesirable work space on the south side, and Spenla's statements that he did not want Scott working near Mr. Ebuehi, who was in the process of being terminated from the Auditor's Department. According to the parties, Spenla did not want Scott and Mr. Ebuehi to file more complaints against the City of Phoenix. Concerning Scott's allegation that Spenla prevented Scott from being transferred to the Finance Department, Spenla's statement to Mr. Wingenroth concerned Scott's physical or mental ability to handle responsibility in the workplace.

Not only are the incidents cited by Scott not of a racial nature, these incidents, when compared to other hostile work environment cases, are not severe or pervasive enough to violate Title VII. For example, in *Sanchez v. City of Santa Ana*, the Court of Appeals affirmed the dismissal of a hostile work environment claim, even though the employer posted a racially offensive cartoon, made racial slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on Latinos. 936 F.2d 1027, 1031, 1036–37 (9th Cir. 1990). Also, in *Kortan v. California Youth Authority*, the Court of Appeals did not find a supervisor's conduct was severe or pervasive enough to unreasonably interfere with the plaintiff's employment, even though the supervisor called female employees offensive names on several occasions. 217 F.3d at 1107, 1111.

When considered in light of previous cases, the conduct complained about by Scott did not create an abusive work environment. The allegedly harassing incidents, none of which contained any racially-related conduct, did not create an objectively hostile work environment for Scott.

**E.     Additional Grounds for Summary Judgment on Title VII Claims**

In addition to their arguments that Scott cannot establish a *prima facie* case for racial discrimination, or that Defendants' proffered reasons for the employment decisions were pretextual, Defendants also argue that Scott's Title VII claims (but not his claims under sections 1981 or 1983) are barred on statute of limitations and exhaustion grounds.

//

1. *Statute of Limitations*

Under Title VII, exhaustion of administrative remedies is a prerequisite to filing a complaint with the federal court. *Lyons*, 307 F.3d at 1103–04. Exhaustion requires the complainant to file a timely charge with the EEOC. *Id.* at 1104 (citing 42 U.S.C. § 2000e-5(b)). Under Title VII, a complainant must file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).

Scott filed his EEOC charge on January 6, 2009. (Compl., Ex. A; DSOF at ¶ 36; PRSOF at ¶ 36.) Accordingly, the 300-day statute of limitations bars claims arising before March 12, 2008. The undisputed facts show that Scott was assigned to the allegedly undesirable work space on January 2, 2008. (DSOF at ¶ 13; PRSOF at ¶ 13.) Defendants argue that the Title VII claim arising in connection with the work space assignment are time-barred, because the statute of limitation begins to run when Scott was first subjected to the allegedly discriminatory action. Scott does not respond to this argument, and by failing to do so, Scott is deemed to have waived the issue. *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding that the plaintiff abandoned two of her claims by not raising them in opposition to the defendant's motion for summary judgment); *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("At any rate, failure of a party to address a claim in an opposition to a motion for summary judgment may constitute a waiver of that claim") (citing *Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000)). Accordingly, in addition to the reasons set forth above, the Court will grant summary judgment in Defendants' favor with respect to Scott's Title VII work space claim.

2. *Exhaustion of Administrative Remedies*

As noted above, Title VII complainants must exhaust their administrative remedies by filing a timely charge with the EEOC prior to availing themselves of the federal courts. *Lyons*, 307 F.3d at 1103–04. "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* at 1104 (quoting *Green v. L.A. County Superintendent of Schools*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)).

1  The EEOC charge filed by Scott alleges that he experienced disparate treatment based
2  on his race, and cites to the assignment of an "undesirable work area location" to prevent him
3  from interacting with Mr. Ebuehi. The EEOC charge refers to a report that Scott was seen
4  "huddled together" and "counseling" Mr. Ebuehi. (Compl., Ex. A.) Absent from the EEOC
5  charge is any reference to the denial of a transfer request and Spenla's comments regarding
6  a transfer, both of which occurred in or around March 2008.

Defendants argue that because the transfer issue is not like or related to the undesirable work space issue, and is even less connected to the issue with Mr. Ebuehi, the failure to mention the transfer issue in the EEOC charge deprives the Court of subject matter jurisdiction. Scott fails to address this argument in his response, and as a result, the Court will deem this claim waived. *Jenkins*, 398 F.3d at 1095 n.4; *Abogados*, 223 F.3d at 937. Regardless of Scott's waiver, the Court finds merit in Defendants' position. It is unlikely that the transfer issue is sufficiently related to the work space segregation issue that it would be reasonably expected that the transfer issue would grow out of the EEOC's investigation of Scott's charge.

## IV. CONCLUSION

Because Scott has failed to establish a *prima facie* case of racial discrimination, and there are no issues of material fact genuinely in dispute, summary judgment on all claims is appropriate. Additionally, Scott failed to show that Spenla's reasons were pretextual for assigning Scott to an undesirable work space, and denying his transfer request. Contrary to Scott's response, Spenla did not subject Scott to a hostile work environment. Finally, Scott's Title VII claims fail because his work space claim is time barred, and he failed to exhaust his administrative remedies with respect to his transfer claim.

Accordingly,

//
//
//
//

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Liability (Dkt. 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiffs, with Plaintiffs to take nothing.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

DATED this 25th day of July, 2011.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge